IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES R. DAHLKA,

                                                       OPINION AND ORDER

              Plaintiff,

                                              17-cv-245-bbc

       v.

UNUM LIFE INSURANCE COMPANY OF AMERICA
and ILLINOIS TOOL WORKS, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil suit for monetary relief, plaintiff James Dahlka contends that defendant

Unum Life Insurance Company of America's determination that he did not satisfy the

elimination period with respect to his claim for long-term disability benefits was arbitrary

and capricious, in violation of his rights under the Employment Retirement Income and

Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Before the court are the parties' cross

motions for summary judgement. Dkt. #12 and #16.

Plaintiff asserts that Unum acted arbitrarily and capriciously in denying benefits by:

(1) issuing multiple denials that amounted to a "moving target"; (2) using an erroneous

vocational standard for light work and not the actual job requirements provided by plaintiff's

employer; (3) failing to consider plaintiff's failed work attempts after he underwent surgery;

and (4) not considering plaintiff's treating provider evaluations. He also seeks attorney fees

and costs under 29 U.S.C. § 1132(g)(1) on the ground that defendants' position is not

substantially justified. Defendants argue that: (1) defendant Unum is entitled to summary judgment because it reviewed plaintiff's claim fully and fairly and had a rational basis for denying it; (2) plaintiff has no independent basis for asserting a claim against defendant Illinois Tool Works; and (3) even if defendant Unum acted arbitrarily and capriciously, plaintiff's benefits are subject to an offset for plaintiff's estimated Social Security Disability Insurance benefits.

For the reasons stated below, I find that defendant Unum did not act arbitrarily and capriciously in denying plaintiff benefits. Accordingly, I am granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment with respect to Unum's denial of plaintiff's claim for long-term disability benefits. Because plaintiff does not contest defendants' contention that he does not have an independent basis for asserting a claim against defendant Illinois Tool Works, I also am dismissing plaintiff's claims against his employer.

From the parties' proposed findings of fact and the administrative record (AR), I find the following facts to be undisputed.

## UNDISPUTED FACTS

### A. The Parties and the Policy

Plaintiff James Dahlka is a resident of Chippewa County, Wisconsin, and was employed as a manufacturing general technician by defendant Illinois Tool Works, Inc. at

its plant in Chippewa Falls, Wisconsin. Defendant Unum Life Insurance Company of America is an insurance company authorized to conduct business in Wisconsin.

On March 7, 2011, plaintiff signed a copy of a job description for the position of manufacturing general technician at Illinois Tool Works. The brief description focused on the particular tasks involved with monitoring molding machines and equipment to maintain production demands and parts quality and did not include any exertional requirements. AR 39.

Around February 1, 1985, Unum issued a group long-term disability insurance policy to Illinois Tool Works for the benefit of its eligible employees. AR 76. The policy terminated on July 1, 2013. Under the policy, Unum had the "discretionary authority" to determine an employee's eligibility and to construe the terms of the policy. Id. at 80. The policy provides for an "elimination period," meaning that benefits do not begin until after a claimant has been continuously disabled for a consecutive period of 180 days or the expiration of the short-term disability benefit period. AR 78. If the claimant's disability stops during the 180-day elimination period for any period of 30 days or less, the disability is treated as continuous for calculating the 180 days of continuous disability. However, the days that a claimant is not disabled do not count toward the satisfaction of the 180-day elimination period. Id. at 82. Under the policy, "disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; and

2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings; or

3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:

   a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

   b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

AR 85.


B. Plaintiff's Surgery, Short-Term Disability and Work Attempts

In 2011, plaintiff reported having severe foot and ankle pain in his right leg. On June 12, 2013, plaintiff's podiatrist, Dr. Mark Schumaker, restricted plaintiff from work because of the pain. AR 573. On June 18, 2013, Dr. Schumaker diagnosed calcaneal navicular coalition, ankle instability, a torn anterior and posterior talofibul ligament and a partial tear of the anterior tibial fibular ligament. Id. at 522-23.

On July 17, 2013, plaintiff filed a short-term disability claim with Aetna Life Insurance Company and received benefits under that plan until approximately May 22, 2014. Plaintiff's short-term disability benefits were supposed to terminate on January 1, 2014, but because of a processing error by Aetna, the benefits continued longer than they should have. AR 309.

On July 24, 2013, Dr. Schumaker performed calcaneal and navicular coalition resection surgery on plaintiff's right foot and ankle and restricted plaintiff from working until September 16, 2013 so that he could recover from the surgery. AR 283, 340, 526. On September 18, 2013, plaintiff attempted to return to work without restrictions, but he worked for only two shifts. Id. at 338. On September 24, 2013, Dr. Schumaker limited plaintiff to a "sit down job." Id. at 342. Because plaintiff's employer could not accommodate that restriction, Dr. Schumaker issued another work restriction on September 27, 2013, stating that plaintiff was unable to work until October 18, 2013. Id. at 280-81, 381. Dr. Schumaker later extended plaintiff's return to work to November 25, 2013. Id. at 278.

On November 1, 2013, plaintiff saw Dr. Patrick Roberts for a second opinion, at Dr. Schumaker's request. AR 586-87. Dr. Roberts's examination of plaintiff revealed normal findings, including no pain or crepitus (grinding) with range of motion, good strength and no obvious edema. In Dr. Roberts's opinion, plaintiff's symptoms were the result of impingement in an unidentified location. He recommended orthotics and Celebrex and suggested an injection if the medication did not relieve plaintiff's pain. Id. On November 26, 2013, Dr. Schumaker stated that plaintiff could return to work on December 6, 2013. Id. at 382-83.

During the 31 days between December 6, 2013 and January 7, 2014, plaintiff attempted working but worked reduced hours, using vacation, funeral and sick leave. AR 424-26. Plaintiff worked four consecutive days at the end of December 2013, but he was

in pain and worked only two additional days the following week before stopping work altogether on January 3, 2014.  Id. at 53, 424-26.

On January 7, 2014, Dr. Schumaker signed a form stating that plaintiff would be off work until January 14, 2014.  AR 384. At the request of Dr. Schumaker, plaintiff saw Dr. Mark Herr on January 13, 2014, for a second opinion about his ongoing pain.  Id. at 428. Dr. Herr noted that plaintiff's ankle was "fairly benign but he has not worked" and that plaintiff reported swelling and pain with increased activities despite bracing, therapy and other options.  He stated that he had nothing surgically to offer plaintiff to help him quickly or definitively, recommended that plaintiff gradually increase his work hours and referred plaintiff to Dr. Andrew Floren, an occupational medicine specialist.  Id.

On January 29, 2014, plaintiff saw Dr. Floren, who limited plaintiff to no walking or standing more than four hours per shift and no climbing ladders over six feet tall.  Id. at 385. On April 28, 2014, Dr. Floren made these restrictions "permanent."  Id. at 388.

Plaintiff did not seek care from Dr. Floren again until October 20, 2014, after his disability claim had been denied (see below).  At that visit, Dr. Floren noted that plaintiff wanted to seek legal action and that plaintiff had been told that Dr. Floren's paperwork was not properly filled out or thoroughly complete.  Plaintiff reported that he had no pain while at rest but had severe pain in his right ankle after standing for more than three hours. Plaintiff was taking Aleve a couple of times a week and wearing an ankle brace.  AR 430. Dr. Floren observed that plaintiff's surgical incision was well-healed with no swelling or tenderness, plaintiff had full range of motion in the ankle and "there was little to suggest

significant pathology." Id. at 431. Dr. Floren completed additional paperwork for plaintiff, repeating the same standing and walking restrictions.

After receiving a medical certification dated April 6, 2015, in which Dr. Floren noted his standing and walking restrictions for plaintiff, Illinois Tool Works sent Dr. Floren an "Essential Job Function Analysis" for plaintiff's regular job as a general technician. The document listed "operate 14-15 injection molding machines for production cell on 12 hour work shift — walking/standing/squatting — 98% required" and "other tasks and duties as assigned, may include ladder climbing — 5% required" as two of the primary responsibilities. AR 433. Under "position skills and experience requirements, the document listed "ability to lift up to 55 lbs. — 50% required." Id. Because plaintiff's employer was unable to accommodate the four-hour shift and no six-foot ladder restrictions, it eventually terminated plaintiff. (The parties do not make it clear when this occurred.)

### C. Long-Term Disability Claim, Review and Appeals

Around May 18, 2015, plaintiff filed a claim for long-term disability benefits with Aetna, which had become Illinois Tool Works's insurance carrier in July 2013. Dr. Floren completed an attending physician statement on May 26, 2015, in which he stated that plaintiff should not be standing or walking more than fours hours during a shift and not climbing ladders over six feet tall. Dr. Floren also wrote that he first saw plaintiff on January 29, 2014 and that he had advised plaintiff to stop working on October 20, 2014. AR 58.

After it was determined that Unum was the appropriate insurance carrier, plaintiff filed a claim with Unum, which received it on June 19, 2015. Id. at 52-53. Unum contacted plaintiff's employer on June 30, 2015, and learned that plaintiff had stopped working on June 12, 2013, returned to full-duty work on September 18, 2013 and last worked 12.25 hours on January 3, 2014. Id. at 108-09, 206. Relying on this information, Unum denied plaintiff's claim on July 29, 2015, stating that plaintiff had not satisfied the 180-day elimination period because he had returned to full-duty work on September 18, 2013. AR 219-20. At that time, Unum had not conducted a medical review of plaintiff's claim.

Plaintiff filed an appeal on January 5, 2016, claiming that he had returned to full-duty work for only two shifts beginning on September 18, 2013 and that the two-day work attempt was less than the 30 days allowed by the policy. AR 306-07. On January 11, 2016, Unum contacted Illinois Tool Works for additional information and learned that plaintiff had returned to work for only two days in September 2013. Id. at 337. In a letter dated January 22, 2016, Unum reversed its denial and stated that it would complete a further review of plaintiff's claim. Id. at 357.

On March 18, 2016, Unum denied plaintiff's claim for a second time on the ground that plaintiff had not satisfied the elimination period because he had returned to work without restrictions for a period of 31 days from December 6, 2013 to January 7, 2014. AR 403-05. Plaintiff filed an appeal on August 23, 2016, arguing that he had worked only four full shifts during those 31 days and took vacation, bereavement and sick leave to make up

for his reduced work hours.  Id. at 421-22.  Plaintiff provided time sheets to support his

contention, and Unum requested paystubs from his employer.  Id. at 424-26.

In a September 23, 2016 response to a questionnaire from Unum, Dr. Schumaker

wrote that he had not provided any restrictions for plaintiff between December 6, 2013 and

January 7, 2014.  AR 468.  On November 7, 2016, plaintiff supplemented his appeal with

an October 27, 2016 report from Dr. Andrew Floren, who stated that "had he seen" plaintiff

on January 5, 2014, he would have issued the same work restrictions (no standing more than

four hours per shift) that he issued when he saw plaintiff for the first time on January 29,

2014.  Id. at 499-500.

On November 15, 2016, Unum's senior vocational rehabilitation consultant reviewed

the job description for the position of manufacturing general technician, plaintiff's

restrictions, the United States Department of Labor's Dictionary of Occupational Titles and

PAQ Services, Inc.'s Enhanced Dictionary of Occupational Titles and determined that the

job duties were consistent with the occupational tasks of plastic press molder as listed in the

Enhanced Dictionary because both positions required tending molding machines.  The

consultant noted that a plastic press molder qualified as light work, which the Dictionary

defines as

> Exerting up to 20 pounds of force occasionally (Occasionally: activity or
> condition exists up to 1/3 of the time) and/or up to 10 pounds of force
> frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the
> time), and/or a negligible amount of force constantly (Constantly: activity or
> condition exists 2/3 or more of the time) to move objects.  Constantly
> Standing and/or Walking with Sitting not present.

AR 502-03.

Unum's consulting orthopedic surgeon, Dr. Wade Penny, reviewed plaintiff's medical records and agreed with the restrictions and limitations assessed for plaintiff from the date of his surgery (July 24, 2013) to September 27, 2013, when plaintiff reported that he could not resume consistent lifting during a full 12-hour shift. AR 619-24. However, Dr. Penny determined that the medical evidence showed that plaintiff was able to perform sustained, full-time, light-level work beginning 12 weeks after his surgery, or around October 10, 2013. Id. at 620.

In support of his opinion, Dr. Penny noted that the findings of Dr. Schumaker, Dr. Roberts, Dr. Herr and Dr. Floren were "basically normal" and did not show significant pathology. He also found that the restrictions provided by plaintiff's physicians in late 2013 and 2014 were varied and based exclusively on plaintiff's self-reports, that plaintiff did not have any swelling after July 24, 2013, that no further reconstructive procedures were recommended and that plaintiff treated his pain with over-the-counter medication (Aleve) after he was last prescribed Celebrex on November 1, 2013. AR 620-24.

Relying on Dr. Penny's opinion and the fact that Dr. Schumaker had not issued plaintiff any restrictions during the disputed 31-day time period, Unum denied plaintiff's claim a third time on January 29, 2017. Unum noted that plaintiff's treating physicians (in particular, Schumaker and Floren) did not issue contemporaneous restrictions or limitations precluding plaintiff from performing sustained, full-time, light-level activity in his own occupation throughout the 180-day elimination period (June 11, 2013 to January 7, 2014) and that the restrictions assessed by Dr. Floren after the 180-day period reflected plaintiff's self-reported symptoms rather than any medical findings. AR 626, 629-30.

OPINION

Under ERISA, a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When a court reviews a denial of benefits under an insurance policy governed by ERISA, the denial must be reviewed under the de novo standard unless the plan has given the plan administrator or fiduciary discretionary authority to determine benefits or construe the terms of the plan. Williams v. Aetna Life Insurance Company, 509 F.3d 317, 321 (7th Cir. 2007) (quoting Firestone Tire and Rubber v. Bruch, 489 U.S. 101, 115 (1989)). The parties agree that the arbitrary and capricious standard of review applies in this case because the policy grants discretionary authority to Unum to make all benefits determinations.

The "arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." Semien v. Life Insurance Co. of North America, 436 F.3d 805, 812 (7th Cir. 2006) (quoting Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1996)).

> Despite the deferential nature of this standard however, it "is not a rubber stamp" and a denial of benefits will not be upheld "when there is an absence of reasoning in the record to support it." Therefore, this court will uphold the Plan's determination "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the

11

administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem."

Williams, 509 F.3d at 321-22 (quoting Hackett v. Xerox Corporation Long Term Disability Income Plan, 315 F.3d 771, 773 (7th Cir. 2003); Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 429 F.3d 698, 700 (7th Cir. 2005)).

In addition to these substantive requirements, ERISA requires that, in denying a claim, the claims administrator communicate the "specific reasons" for the denial to the claimant and afford the claimant an opportunity for a "full and fair review." 29 U.S.C. § 1133; Hackett, 315 F.3d at 775 (internal citation omitted); Schilling v. Epic Life Insurance Co., 2015 WL 856575, at *12 (W.D. Wis. Feb. 27, 2015) (noting same procedural requirements). Substantial compliance with these two requirements is sufficient to satisfy ERISA. Hackett, 315 F.3d at 775; Schilling, 2015 WL 856575, at *12. For example, even though the plan administrator must give the applicant the reason for the denial, it "does not have to explain to him why it is a good reason." Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir.1996) ("To require that would turn plan administrators not just into arbitrators . . . but into judges.").

Plaintiff argues that Unum acted arbitrarily and capriciously in denying his claim for long-term disability benefits because Unum issued multiple denials that resulted in a "moving target" and failed to consider the actual requirements of plaintiff's job, plaintiff's failed work attempts during the disputed 31-day period and the evaluations of plaintiff's treating providers. I will address these issues separately below.

### A. <u>Moving Target</u>

Plaintiff argues that Unum tried repeatedly to find ways to justify a finding that plaintiff did not satisfy the elimination period, and changed its reasoning each time plaintiff refuted the finding or provided new information. He also accuses Unum of "moving the target" by not telling him sooner that it found his medical evidence insufficient because it was based on his self-reported symptoms. <u>Holmstrom v. Metropolitan Life Insurance Co.</u>, 615 F.3d 758, 776 (7th Cir. 2010) (defendant exhibited arbitrary and capricious behavior by repeatedly inviting additional evidence of disability and finding it insufficient under new standards or expectations that had not been communicated to plaintiff).

Contrary to plaintiff's contentions, he was asked to satisfy the 180-day elimination period, which is a condition that plaintiff must satisfy before otherwise qualifying or receiving benefits under the policy. Unum requested plaintiff's work history from his employer and learned that he had returned to work on September 18, 2013, which was only 90 days after his alleged disability began, and last worked on January 3, 2014. After receiving information from plaintiff that his employer's responses were not entirely accurate because they did not make it clear that plaintiff returned to work for only two days in September 2013, Unum agreed to reconsider its denial and seek further information. Illinois Tool Works then stated that plaintiff was released to work on December 6, 2013 and worked full shifts on January 2 and 3, 2014. When plaintiff again objected that his employer's information was not correct and that he had not worked regular shifts during that period, Unum reviewed plaintiff's paystubs, timesheets and medical record. At that point,

Unum determined that plaintiff did not have any contemporaneous restrictions or limitations precluding him from performing sustained, full-time, light-level activity between December 6, 2013 and January 7, 2014, and that the restrictions later assessed by Dr. Floren on January 29, 2014 reflected only plaintiff's self-reported symptoms rather than any medical findings.

The fact that Unum requested additional information and proof that plaintiff satisfied the elimination period after relying on information provided by plaintiff's employer does not qualify as a moving target. Unum acted reasonably and rationally in relying on the information provided by Illinois Tool Works and revisiting its decisions when plaintiff provided further evidence showing that his employer had not accurately or fully described his work attempts. Unum also did not move the target by then analyzing plaintiff's medical records and work restrictions after finally receiving a more complete description of plaintiff's work history. Up until that point, Unum was under the impression that plaintiff had returned to work during the elimination period and had no reason to analyze whether he had any limitations and whether his work restrictions were justified. Unum's rejection of Dr. Floren's retrospective restrictions because it was based on plaintiff's self-reports of pain did not involve a "new" expectation or requirement. Unum's review of plaintiff's claim had not required it to analyze plaintiff's medical record before that point because plaintiff first had to show he had not actually worked during the elimination period. Contra Holmstrom, 615 F.3d at 776 (faulting insurer for asking plaintiff to undergo more medical testing and then rejecting results in part because testing was not done before insurer had requested it).

### B. Job Requirements

In the policy applicable in this case, disability is defined for the first 24 months as "because of injury or sickness . . . the insured cannot perform each of the material duties of his *regular occupation*." AR 85 (emphasis added). The policy does not define "regular occupation" but authorizes Unum, as the plan administrator, to construe or interpret the terms of the policy. Although Unum's interpretation is entitled to deference under the arbitrary and capricious standard, the interpretation must have rational support in the record. Frye v. Thompson Steel Co., 657 F.3d 488, 495 (7th Cir. 2011).

Plaintiff faults Unum and its reviewing physician, Dr. Penny, for using a general definition of "light work" to describe the demands of his position, rather than the job description provided by Illinois Tool Works. Plaintiff's objection is based on the following discrepancies between the two definitions: (1) the light work definition limits exertion to 20 pounds occasionally, 10 pounds frequently and a negligible amount constantly, whereas the Illinois Tool Works job description for manufacturing general technician lists the ability to lift up to 55 pounds for 50 percent of the time as an essential duty; and (2) plaintiff's job description required 12-hour shifts and not eight-hour workdays. Defendants argue that Unum's senior vocational rehabilitation consultant reasonably relied on the Dictionary of Occupational Titles to identify and define the requirements of plaintiff's "regular occupation."

Although the Court of Appeals for the Seventh Circuit has held that ERISA demands "a 'reasonable inquiry' into a claimant's medical condition and his vocational skills and

potential," O'Reilly v. Hartford Life & Accident Insurance Co., 272 F.3d 955, 961 (7th Cir.

2001) (citing Quinn v. Blue Cross and Blue Shield Association, 161 F.3d 472, 476 (7th Cir.

1998)), it has not addressed specifically what qualifies as a reasonable interpretation of the

term "regular occupation" in an ERISA policy. However, as defendants point out, many

other federal courts have upheld as reasonable an ERISA plan administrator's interpretation

of "regular occupation" as meaning a general occupation rather than a particular position

with a particular employer. E.g., Osborne v. Hartford Life & Accident Insurance Co., 465

F.3d 296, 299 (6th Cir. 2006); Gallagher v. Reliance Standard Life Insurance Co., 305 F.3d

264, 272 (4th Cir. 2002) (use of Dictionary job description is acceptable reference when it

"involve[s] comparable duties" to plaintiff's position); Dragus v. Reliance Standard Life

Insurance Co., 2017 WL 1163870, at *11 (N.D. Ill. Mar. 29, 2017), aff'd, 882 F.3d 667

(7th Cir. 2018) (using Dictionary to determine "regular occupation" provides "objectively

reasonable job description for assessment of disability in ERISA case[s]"); Valeck v. Watson

Wyatt & Co., 266 F. Supp. 2d 610, 620-21 (E.D. Mich. 2003) (upholding interpretation

of "regular job" and "regular occupation" as "kind of work [insured] did" rather than

"specific job in the specific office and with the specific supervisor and co-workers with whom

she worked"); Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, 120 F. Supp.

2d 1253, 1259 (D. Nev. 2000) ("This Court finds that the term, 'occupation,' is a general

description, not a specific one."); Dionida v. Reliance Standard Life Insurance Co., 50

F.Supp.2d 934, 939 (N.D. Cal. 1999) ("The term 'regular occupation' may be fairly

construed to mean 'a position of the same general character as the insured's previous job, with similar duties and training requirements.").

In <u>Osborne</u>, the Court of Appeals for the Sixth Circuit reasoned:

The word "occupation" is sufficiently general and flexible to justify determining a particular employee's "occupation" in light of the position descriptions in the Dictionary [of Occupational Titles] rather than examining in detail the specific duties the employee performed. "Occupation" is a more general term that seemingly refers to categories of work than narrower employment terms like "position," "job," or "work," which are more related to a particular employee's individual duties. Although reasonable persons may disagree over the most appropriate methodology for determining a particular employee's "occupation," we cannot say that Hartford transgressed the boundaries of its broad discretion under its insurance policy and the ERISA plan to make disability determinations.

<u>Osborne</u>, 465 F.3d at 299. I am persuaded that it was not arbitrary or capricious for Unum to interpret "regular occupation" as general definition that applies nationwide, and that the <u>Dictionary of Occupational Titles</u> is an acceptable source for nationwide job descriptions and classifications. <u>Myers v. Life Insurance Co. of North America</u>, 2009 WL 742718, at *17 (N.D. Ill. Mar. 19, 2009) (noting same in case with same undefined policy term).

The record shows that Unum's consultant reviewed the manufacturing general technician job description, plaintiff's restrictions, the <u>Dictionary of Occupational Titles</u> and the <u>Enhanced Dictionary of Occupational Titles</u> and determined that plaintiff's job duties were consistent with the occupational tasks of plastic press molder because both positions required monitoring or tending molding machines. The consultant also correctly noted that a plastic press molder qualified as light work under the <u>Dictionary</u>. Plaintiff does not argue that Unum chose the wrong occupation or category or work from the <u>Dictionary</u> or that the

tasks or responsibilities of a plastic press molder are dissimilar to those of manufacturing general technician, <u>Myers</u>, 2009 WL 742718, at *17 (noting same), and he presents no evidence that the regular operation of tending molding machines requires twelve-hour shifts and lifting up to 55 pounds. Rather, plaintiff's arguments focus on the unique nature of his particular position with Illinois Tool Works.

As the cases above hold, Unum acted well within its discretion under the policy in construing the term "regular occupation" to mean a category of work rather than a job description drafted by a particular employer. Without more, plaintiff cannot show that Unum ignored or failed to consider the essential duties generally understood to be part of his "regular occupation." Therefore, I conclude that Unum's decision to identify plaintiff's regular occupation as light-level work as a plastic press molder is reasonable and has rational support in the record.

## C. <u>Failed Work Attempts and Treating Provider Evaluations</u>

Plaintiff contends that Unum "cherry picked" the evidence that favored its denial of benefits by ignoring the importance of his failed work attempts, not addressing his treating providers' repeated notes about the correlation between his pain and a low activity level and not requesting an independent medical examination. In support, he cites <u>Holmstrom</u>, 615 F.3d at 777 (noting that selective consideration of medical evidence suggests arbitrary decision making).

As an initial matter, I note that plaintiff seems to assume that Unum and the reviewing physician owed deference to the opinions of his treating providers. However, under ERISA, a treating physician's opinion is not entitled to more deference than the opinion of a reviewing physician hired by the plan. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). See also Holmstrom, 615 F.3d at 774 (reciting same standard). The fact that Unum relied on the opinion of a reviewing physician who did not personally examine plaintiff also does not suggest an arbitrary and capricious decision. Unum's decision to "seek independent expert advice" is reasonable and "evidence of a thorough investigation." Davis v. Unum Life Insurance Co. of America, 444 F.3d 569, 575 (7th Cir. 2006). There also is no prohibition on "the commonplace practice of doctors arriving at professional opinions after reviewing medical files." Id. at 577 ("[D]octors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation.").

"[T]he deferential standard of review requires that we accept '[the administrator's] choice between competing medical opinions so long as it is rationally supported by record evidence.'" Becker v. Chrysler LLC Health Care Benefits Plan, 691 F.3d 879, 889 (7th Cir. 2012) (citing Black v. Long Term Disability Insurance, 582 F.3d 738, 745 (7th Cir. 2009)).

Here, there is sufficient evidence to support Unum's decision, and in light of the record before it, Unum provided a reasoned explanation for its decision. Militello v. Central States, Southeast & Southwest Areas Pension Fund, 360 F.3d 681, 686 (7th Cir. 2004) (decision will not be overturned if decision maker can offer reasoned explanation based on evidence). Contrary to plaintiff's assertions, Unum did not ignore plaintiff's failed work attempts. As detailed above, Unum considered plaintiff's explanations that he did not work full shifts after he returned to work in September 2013 and again in December 2013. However, Unum's reviewing physician, Dr. Penny, reviewed plaintiff's full medical record and work history and concluded that there was little evidence to support the restrictive limitations imposed by Dr. Schumaker and Dr. Floren after about October 27, 2013. As defendants point out, there was no work restriction in place between December 6, 2013 and January 7, 2014. Although Dr. Floren later speculated that he would have limited plaintiff to four-hour shifts and no climbing ladders over six feet during that period, he did not examine plaintiff until January 29, 2014 and was relying only on plaintiff's self-reported symptoms.

In his report, Dr. Penny focused on the lack of objective medical findings supporting plaintiff's complaints and the restrictive functional limitations imposed by Drs. Schumaker and Floren. In particular, Dr. Penny noted plaintiff's normal physical examinations (including a lack of swelling, a good range of motion and no obvious pathology), the lack of further surgical procedures and the fact that plaintiff was treating his pain with over-the-counter medication after November 1, 2013. A review of the medical records confirms these facts. Plaintiff argues that Unum's analysis focuses on what treatment was not offered

instead of what treatment occurred. However, the only specific treatment that plaintiff says that Unum ignored was his use of "braces," but plaintiff fails to point to any evidence in the record that Dr. Penny ignored with respect to such devices.

In sum, although plaintiff's treating providers may have reached a different conclusion from that of Unum's reviewing physician about plaintiff's need for restrictions and his ability to work, under an arbitrary and capricious review, I do not have the authority to make a determination between competing expert opinions. Davis, 444 F.3d at 576 (internal citations omitted); Semien, 436 F.3d at 812. Accordingly, I conclude that plaintiff's claim received a full and fair review and that the decision to deny him long-term disability benefits has rational support in the record.


ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Unum Life Insurance Company of America and Illinois Tool Works, Inc., dkt. #16, is GRANTED with respect to plaintiff's claim that defendants violated 29 U.S.C. § 1132(a)(1)(B).

2. Plaintiff James Dahlka's motion for summary judgment, dkt. #12, is DENIED.

3.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 11th day of June, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge